Frances Sharp **LICHTENSTEIN**
v.
Maurice **LICHTENSTEIN,** Appellant,
and
**Darby Farms, Inc.**
No. 19352.

United States Court of Appeals,
Third Circuit.
Argued Nov. 9, 1971.
Decided Jan. 3, 1972.

Jay D. Barsky, Silver & Barsky, Philadelphia, Pa., for appellant.

Lewis Kates, Philadelphia, Pa. (S. Regen Ginsburg, Philadelphia, Pa., on the brief), for appellee.

Before VAN DUSEN and JAMES ROSEN, Circuit Judges, and LAYTON, District Judge.

## OPINION OF THE COURT

LAYTON, District Judge.

This is an appeal from a final order directing appellant (husband) to pay the corporate defendant (Darby) sums of money determined to be due by an ac-

countant in accordance with a settlement agreement. The husband contends (1) that the accountant exceeded his authority and (2) that even if he acted within his authority, an appeal can be taken from his determinations.

The plaintiff (wife) and her husband were married in December 1962. Thereafter, Darby was incorporated, Mr. and Mrs. Lichtenstein each owning ⅓ of the stock and one Streeper Karr, III, a corporate officer, the remaining third. The wife claims her husband improperly used his control over Darby to withdraw funds for his own use. He admits wrongfully diverting $37,825.15, but contends that some $35,000 paid by him to Darby on certain occasions should be credited against the amount in dispute.

In 1967, Mrs. Lichtenstein filed a diversity civil action requesting an accounting and repayment of the funds wrongfully distributed by Darby to her husband. However, pursuant to a written agreement between the parties, dated November 27, 1968, this action was terminated. The agreement also purported to settle a similar suit brought by the wife against her husband and another corporate entity, Bethayres Estates, Inc. In addition, the writing constituted a marital property settlement.

This written agreement was incorporated by reference into the Order of the District Court dated December 5, 1968, which discontinued this case. Under the terms of the agreement, an accountant was retained to audit the books of Darby. Both parties agreed that his findings should be conclusive and binding.[1]

On January 21, 1969, the accountant issued his report concluding that the husband was indebted to Darby in the total sum of $47,331.44. A previously designated escrow agent distributed to Darby $14,133.46 from funds then on deposit, leaving a balance of $33,197.98 plus interest due and owing to Darby. The husband made no real effort to contest the findings of the accountant, or to assist him in arriving at his final con-

1. Exhibit "A," 18a–22a.

clusions. As this Court stated in a prior appeal, "Mr. Lichtenstein sought to take exceptions to the audit, but he never appeared at any appointments arranged for this purpose."[2]

The husband failing to pay the deficiency which had been assessed against him by the accountant, his wife initiated a contempt proceeding in the District Court. On May 12, 1969, the District Court found husband guilty of civil contempt of which he could purge himself by furnishing a bond guarantying payment of sums aggregating $47,697.98. In reversing the District Court's contempt citation on April 2, 1970, this Court decided that the record did not permit a ruling on the issue raised by the husband as to whether he had a legal right to take exceptions to the audit. In effect, it stated the pivotal question to be:

> ". . . whether the parties to the settlement agreement intended that a right to except to the audit was included. (Citations omitted.) The inquiry is directed at interpreting the contract language in the light of surrounding circumstances with a view toward the objectives to be accomplished by the contract."[3]

The Court next remanded the issue to the District Court so that it might supplement the record regarding this issue, stating if the inquiry should prove inclusive, that Pennsylvania law permitting such appeals in the absence of language specifically prohibiting them would probably govern the disposition of this case.[4]

The District Court ordered a hearing on the issue of whether the agreement precluded judicial exceptions to the con-

clusions of the accountant, and concluded:

> ". . . that the parties intended the language 'binding and conclusive' to mean that appeals to this Court from the accountant's certified audit were precluded except in case of alleged fraud or corruption on the part of the accountant."[5]

■ We agree with the District Court that, insofar as concerns judicial appeals therefrom, the findings of the accountant were "conclusive and binding" on the parties. When an agreement is entered into by parties for the express purpose of terminating a pending litigation between them, that agreement should be construed in a manner that tends to restrict judicial action taken with respect to it. As the Supreme Court of Pennsylvania stated:

> "Where the right of one of the parties to such an agreement compromising pending litigation is contested, the true interpretation of the agreement should be found . . . within the terms of the decree entered in accordance with the compromise."[6]

In the instant case, the purpose of the agreement was to restrict, not encourage, litigation, and the District Court's action—holding that the findings of the accountant were "conclusive and binding"—was merely an exercise of its power to enforce a settlement agreement which it had approved.[7]

However, this does not mean that the husband could not take exceptions to the findings of the accountant. The actions of the accountant in trying to get in contact with Mr. Lichtenstein, and the attempts of counsel for both sides to arrange a conference between him and the

2. Lichtenstein v. Lichtenstein, 425 F.2d 1111, 1112 (3rd Cir. 1970).

3. *Ibid.*, 1113, fn. 2.

4. *Ibid.*, 1113, fn. 2.

5. Lichtenstein v. Lichtenstein, 321 F.Supp. 152, 154 (E.D.Pa.1970).

6. Melnick v. Binenstock, 318 Pa. 533, 179 A. 77, 78 (1935). See, Kelly v. Greer, 365 F.2d 669, 671 (3rd Cir. 1966); Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 803 (3rd Cir. 1962).

7. *Kelly*, supra n. 6.

accountant both before and after January 21, 1969, demonstrate reasonably clearly that both sides interpreted the agreement to mean that the accountant might hear exceptions from his determinations prior to their being made final.

■ But, although the right to take exceptions to the accountant's report was inherent in the agreement, nevertheless, the record makes it clear that the actions of the husband in deliberately failing to meet with the accountant despite the efforts to arrange such a meeting, must be viewed as a waiver of the right.

■ The husband contends, in addition, that certain unusual circumstances showed that his wife changed her interpretation of the contract so that either its meaning had been altered or its effect is no longer binding on him. After the judgment of this Court had been entered, Mrs. Lichtenstein presented a newly transcribed deposition of Karr to the accountant. The deposition had been taken prior to the execution of the 1968 settlement agreement, and it led the accountant to conclude that the husband's obligations to Darby actually totalled $59,756.44 as of January 31, 1969, and not $47,331.44, as shown on the original audit. We have concluded that the District Court was in error in using the revalued figure in determining the award to Darby in its final Order of September 15, 1970.

In our view, the time for putting in all pertinent evidence before the accountant was in January, 1969. Instead, Mrs. Lichtenstein waited nearly two years. The judgment will be computed as follows: Mr. Lichtenstein will pay Darby $33,197.98 together with 6% interest on $47,331.44 from January 31, 1969 to April 14, 1969, and in addition, 6% on $33,197.98 from April 14, 1969, until the judgment is paid.

The opinion and order of the District Court, as modified in the foregoing paragraph, will be affirmed, with costs to be paid by the defendant-appellant.