## Rosenbaum v. Raiton

*Joseph Gindhart,* for plaintiff.
*Harold Levy,* for defendants.

VOGEL, *J.,* February 12, 1980—This court must

again decide whether or not to hold defendants[1] in the above captioned matter in contempt of court for failing to comply with a decree of this court entered in a prior equity proceeding. As there appears to be no other alternative but to do so, we sustain plaintiff's petition.

A brief history of the relevant events in this matter is appropriate. Following an equity proceeding,[2] an amended final decree was signed by this court on November 16, 1978 directing defendants, Ronald Raiton and Nina Raiton, to file an account of all moneys paid to them as mortgagees of certain premises located in Bucks County. The amended final decree directed that 50 percent of defendants' one-third interest in said premises be assigned to plaintiff, Samuel Rosenbaum. Defendants were directed to pay the amount thus due plaintiff within 30 days of the date of the November 16, 1978 amended final decree.

Defendants' appeal of March 14, 1979, from the amended final decree of November 16, 1978, was immediately quashed by the Superior Court by a per curiam order of April 5, 1979 which granted the motion to quash appeal, awarded costs to the present plaintiff, but denied the application for counsel fees.

A detailed procedural history illustrating the dilatory tactics and disregard of court orders undertaken by defendants in this proceeding is contained in the prior opinion of this court of March 2, 1979,

---

1. This entire controversy is especially unpleasant due to the fact that plaintiff, Samuel Rosenbaum, is the father of Nina Raiton, co-defendant.

2. Findings of fact, opinion, conclusions of law, and decree nisi were signed by this court on April 20, 1976. The decree nisi became the final decree on December 15, 1976.

incorporated herein by reference. Suffice it to say that the court in sustaining this contempt petition is not unmindful of the recalcitrant attitude these defendants have exhibited toward our courts.

Plaintiff filed a petition for contempt on January 8, 1979 for defendants' refusal to comply with the terms of the amended final decree. After numerous postponements of the hearing, this court held defendants in contempt by order of June 21, 1979 which allowed defendants to purge their contempt by filing an accounting by June 26, 1979. Evidently that contempt was purged to the satisfaction of plaintiff by the filing of an account of all payments received by defendants with regard to their mortgage interest involved herein.[3]

Plaintiff filed a second petition for contempt on August 14, 1979 which is presently before the court. The petition demands payment of $4,912.50, alleging that:

4. The total amounts received by defendants with regard to said mortgages is in the amount of $7,200, and the total amount paid to others for the account of defendants is $2,700. The total amount paid is therefore $9,900.

5. Defendants have refused and continue to refuse to pay one-half of the funds in the amount of $4,950 less a $37.50 credit for one payment received by plaintiff for a total amount of $4,912.50.

Defendants filed an answer on October 8, 1979, which admitted the total amount received by defendants from said mortgages as alleged in Paragraph 4.[4] The answer denied that defendants have

---

3. See second petition of plaintiff to hold defendants in contempt of court of August 14, 1979, Paragraph 3.

4. In defendants' briefs and at the hearing on December 14, 1979, there has been no controversy as to the amount due, the only issue being defendants' alleged inability to pay.

refused to pay one-half of the funds and averred that defendants are without sufficient funds to pay any sum to plaintiff. After numerous conferences and postponements, a hearing to enable defendants to show cause why they should not be held in contempt was finally scheduled for December 14, 1979 by agreement of counsel. Defendants failed to appear at this hearing.

The law of civil contempt is well settled in this Commonwealth. It was said in East Caln Township v. Carter, 440 Pa. 607, 612-613, 269 A. 2d 703 (1970):

"'. . . [W]here the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with a decree of the court are civil in nature. *The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order, and (2)* in some instances to compensate the complainant for losses sustained.'" (Emphasis in original.) Quoted from Knaus v. Knaus, 387 Pa. 370, 377, 127 A. 2d 669 (1956). See also Brocker v. Brocker, 429 Pa. 513, 241 A. 2d 336 (1968). It is clear that the refusal to comply with a court order to pay money constitutes contempt: Messmore's Estate, 293 Pa. 63, 141 Atl. 724 (1928). Further, an equity court continues to have jurisdiction to enforce its decrees: Advanced Management Research, Inc. v. Emanuel, 439 Pa. 385, 391, 266 A. 2d 673 (1970).

In the answer of October 8, 1979, signed by defendant Ronald Raiton only, it was stated that: ". . . Defendants aver that they are without sufficient

funds to pay any sum to Plaintiff and, therefore, have not paid because of the financial inability to do so." The alleged poor financial straits of defendants were repeated by defendants' counsel in briefs and at the hearing. Defendants' counsel at the hearing on December 14, 1979 urged the court to take judicial notice of a probation report prepared on defendant Ronald Raiton by the U.S. Probation Office for Judge Becker of the Federal Court for the Eastern District of Pennsylvania on December 12, 1978 as evidence of defendants' inability to pay.

It is true that if a person is unable to comply with the court order, such failure does not constitute contempt. However, if his poverty is due to his own misuse of funds, he may still be held in contempt of court: Messmore's Estate, supra, at 69. Defendants' assertion of present inability to comply is an affirmative defense which must be proved by the alleged condemnor: Barrett v. Barrett, 470 Pa. 253, 263, 368 A. 2d 616 (1977); In re Grand Jury, 251 Pa. Superior Ct. 43, 53, 379 A. 2d 323 (1977).

In the absence of testimony by defendants as to their financial situation, this court refuses to accept a bare allegation of poverty as sufficient explanation to avoid compliance with the amended final decree. The Federal Probation Report submitted by counsel for defendants is not binding on this court and may not be fully illustrative of defendants' present financial situation. Further, as Nina Raiton, who was also bound by the amended final decree, was not a party to the probation report and did not attest to the answer, this court has no method of ascertaining her financial situation. The assertions of insolvency fall upon deaf ears where, as here, defendants were given notice through several continuances to accommodate them, had

ample opportunity to testify, and yet failed to appear at the hearing. Thus this court holds that plaintiff has shown by a preponderance of the evidence defendants noncompliance with the amended final decree of November 16, 1978, and defendants as condemnors have failed to prove their present inability to comply with that decree.

Defendants contend that Pa.R.C.P. 209 requires the court to accept as dispositive, on the issue of defendants' financial circumstances, the assertion in their answer that they were financially unable to comply. Rule 209 was designed to prevent a respondent who files a praecipe for argument court from being deemed to admit for the purpose of argument the averments of the petition filed by the adverse party: 1 Goodrich-Amram 2d § 209:1. It has been held that the failure of the moving party to take depositions on disputed issues concedes averments in the respondent's answer: K. of C. Philadelphia Federal Credit Union v. Nicolo, 246 Pa. Superior Ct. 419, 422, 371 A. 2d 908 (1977). However, Rule 209 does not apply to this case for a number of reasons. First, the rule is inapplicable because a hearing was scheduled by the court in order to enable defendants to show cause why they should not be held in contempt. The rule was not designed to enable a respondent to rely on averments in their answer alone, where, as here, they have been given a full opportunity to establish their contentions yet voluntarily choose not to do so. Second, Rule 209 does not apply to assertions of inability to comply, because such contention constitutes an affirmative defense: Barrett, supra, at 263. Third, under Rule 209, it is only "averments of fact responsive to the petition and properly pleaded in the answer" that are deemed admitted by the fail-

ure to take depositions. As the condemnor's assertion is an affirmative defense, it should have been pleaded under the heading "New Matter" in compliance with Pa.R.C.P. 1030: First Pennsylvania Banking and Trust Co. v. Kritzberger, 32 D. & C. 2d 610, 622-23 (1963).

Lastly, defendants allege that the amended final decree of November 16, 1978 was not sufficiently clear and specific to apprise defendants of the act which they must perform, citing Lichtenstein v. Lichtenstein, 425 F. 2d 1111 (3d Cir. 1970), on remand, 321 F. Supp. 152 (E.D. Pa. 1970), aff'd as modified, 454 F. 2d 69 (3d Cir. 1972). Defendants contend that it is the parties' understanding that only one-half of the accounting be paid by defendant, whereas the amended final decree states that defendants must pay the full amount. Furthermore, defendants claim that the fact that the sum to be paid is not certain but varies according to an accounting prepared by defendants violates the requirements of clarity and specificity.

This contention is ludicrous. It is clear to all involved in this proceeding that the resolution of the equity proceeding resulted in a split of the defendants' mortgage interest in a particular property between plaintiff and defendants. Such a distribution, by necessity, cannot be of a sum certain, but must vary according to the payments received from the mortgagor by defendants. The amended final decree of November 16, 1978 clearly expresses that intent.

In conclusion, the dilatory and recalcitrant actions by these defendants require this court to enter the following contempt order. Defendants have demonstrated that only upon peril of prison will they comply with a court order.

666

## ORDER

And now, February 12, 1980, after oral argument before the undersigned on December 14, 1979, in consideration of the record and briefs of counsel, plaintiff Samuel Rosenbaum's second petition for contempt of August 14, 1979 is granted, and defendants, Ronald Raiton and Nina Raiton, his wife, are held to be in contempt of court for failure to comply with the amended final decree of this court of November 16, 1978.

Defendants are committed to the Montgomery County prison for a period of four months commencing March 1, 1980. However, defendants may purge themselves of contempt by payment on or before March 1, 1980, to plaintiff, Samuel Rosenbaum, the sum of $200 and $200 by the first of each month thereafter until the sum of $4,912.50 is paid to plaintiff as per this court's amended final decree of November 16, 1978.