**Bernard H. BAUMRIN, Plaintiff,**

v.

**Francis F. COURNOYER, Defendant.**

**Civ. A. No. 70–418–C.**

United States District Court,
D. Massachusetts.

April 4, 1978.

See, also, D.C., 414 F.Supp. 326.

Jonathan B. Altschuler, New York City, for plaintiff.

Charles Desmarais, New Bedford, Mass., for defendant.

## MEMORANDUM AND ORDER

CAFFREY, Chief Judge.

This matter came before the Court on a "Motion for Contempt" filed by defendant. In the motion, defendant requests a Court order citing plaintiff for contempt of court because of plaintiff's alleged failure to comply with an order of Court which said in pertinent part "That the plaintiff reimburse the prevailing party in accordance with the terms of the stipulation filed in this case and approved by the Court on April 18, 1974." The stipulation referred to provided "that in view of a question of the title of the land in question which is involved in this litigation that the said title of the land shall be examined by Edward DeWitt, Esq., . . . and that the parties shall equally share the cost of his title examination and in the event of a final determination then the prevailing party shall be entitled to be reimbursed for his share of said title examination."

Prior to commencing any work on the case, Mr. DeWitt prepared a letter on August 5, 1974 which he sent to both parties. That letter recited in part: "Before I begin any examination, I wish the parties to realize that there will be substantial expenses involved in travel to and from Martha's Vineyard island and in accommodations, if necessary, while there. In addition there will be per diem charges. I would estimate a minimum fee of $1,000, plus $250 in disbursements. The fee might go as high as $2,000, but I do not think any higher. In the event that it looks as though charges will exceed $2,000, I will so advise you as much in advance as possible." Thereafter, Mr. DeWitt made his title examination,

filed his report, and submitted his bill therefore in the total amount of $5,621.26. More importantly, Mr. DeWitt at no time gave notice to either party that the cost of his title examination would exceed the $2,000 figure stated in the letter. DeWitt, while an interested third-party, is not a party to this motion for contempt.

Plaintiff has paid $500 directly to DeWitt and has reimbursed defendant for the $500 which the latter paid to the title examiner. Plaintiff contends that his only remaining obligation to DeWitt is a payment of $121.26 for the examiner's out-of-pocket disbursements.

### I

Civil contempt, punishable by fine and/or imprisonment, is committed when a person violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act. *Lichenstein v. Lichenstein,* 425 F.2d 1111, 1113 (3d Cir. 1970). As in *Lichenstein,* the court order embodied in this judgment does not specify either the amount of money that plaintiff should pay to reimburse the prevailing party or the amount that DeWitt could properly charge for his title examination. I rule, therefore, that the court order on which this motion is based lacks the requisite specificity to sustain an adjudication of contempt for failure to perform the act of payment. *See id.* In addition, a coercive remedy for failure to comply with a money judgment is committed to the discretion of the Court and should be invoked only in the most compelling circumstances. *E. g., Dunlop v. Fisher,* 406 F.Supp. 760, 761 (D.Colo.1976). A review of the motion and supporting documents, as well as the availability of less harsh avenues of legal relief for the recovery of the full fee claimed, convince me that petitioner has not demonstrated compelling reasons for an adjudication of civil contempt.

I find and rule, on the basis of the foregoing, that Mr. Baumrin's failure to pay the amount claimed by Mr. DeWitt does not constitute a contempt of Court, and, accordingly, the motion for contempt is denied.

## II

■ A claim of an attorney for professional services rendered must, like a claim for any other service, rest upon an express or implied contract. *Jett v. Merchants & Planters Bank,* 228 F.2d 156, 159 (4th Cir. 1956); *Andrews v. Central Surety Insurance Co.,* 295 F.Supp. 1223, 1229 (D.S.Car. 1969). Since DeWitt has failed to challenge plaintiff's characterization of the title examiner's August 5, 1974 letter as a contractually-binding retainer agreement, the Court will treat that document as a valid contract between an attorney and a client for the provision of legal services. *See Hogan v. Wright,* 322 F.2d 83, 85 (6th Cir. 1963).

■ While this Court has the inherent equitable power to pass upon the reasonableness of counsel fees charged in connection with any matter before it, *see, e. g., McInerney v. Massasoit Greyhound Association, Inc.,* 359 Mass. 339, 351, 269 N.E.2d 211 (1971), it would be improper for the Court to nullify, or to diminish the effectiveness of, a valid contract, voluntarily entered into by the parties and under which DeWitt established a fee ceiling subject to a duty of notification. *Jersey Land & Development Corp. v. United States,* 342 F.Supp. 48, 54 (D.N.J.1972). Moreover, the Court of Appeals for this Circuit has cautioned that the exercise of non-statutory, supervisory powers over attorney's fees is reserved for exceptional circumstances and must accord great weight to the fact that a prior fee agreement was reached between the parties. *Farmington Dowel Products Co. v. Forster Manufacturing Co.,* 421 F.2d 61, 90 (1st Cir. 1970). Thus, DeWitt's pleas either for a quantum meruit recovery of the reasonable value of all the services he actually rendered, or that an implied contract existed for his performance, with appropriate remuneration, of any efforts necessary to rebut plaintiff's title claim, falter in the face of the express terms of the retainer agreement calling for prior notice if the $2,000 fee parameter would be exceeded. *Tranberg v. Tranberg,* 456 F.2d 173, 175 (3d Cir. 1972); *Hogan v. Wright, supra* at 85.

If courts have consistently, and liberally, interpreted attorney-client fee agreements in favor of the client and against the drafting attorney in cases in which mutual intent was murky, *e. g., Jersey Land & Development Corp. v. United States, supra* at 54; 4 S. Williston, *Law of Contracts* § 621 (3d ed. W. Jaeger 1961), then a similar result in situations of unambiguous intention would follow *a fortiori.* Thus, DeWitt will be held to the letter of the bargain he struck for himself.

Accordingly, without passing on any further contractual rights DeWitt may have against Baumrin, it is ORDERED that plaintiff pay DeWitt an additional $1,000 for his legal services and $141.41 for the title examiner's out-of-pocket expenses.